UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TAMALA STIDUM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:13CV1590 JAR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Tamala Stidum's ("Stidum") application for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq.

## I.  Background

On April 13, 2011, Stidum filed an application for disability benefits. (Tr. 186-92) The Social Security Administration ("SSA") denied Stidum's application on July 20, 2011. (Tr. 76-80) She filed a timely request for a hearing before an administrative law judge ("ALJ") on July 26, 2011. (Tr. 82-83) Following a hearing on July 19, 2012 (Tr. 9-39), the ALJ issued a written decision on August 15, 2012, upholding the denial of benefits. (Tr. 40-58) Stidum requested review of the ALJ's decision by the Appeals Council. (Tr. 7-8) On June 24, 2013, the Appeals Council denied Stidum's request for review. (Tr. 1-3) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Stidum filed this appeal on August 15, 2013. (Doc. No. 1) The Commissioner filed an Answer. (Doc. No. 9) Stidum filed a brief in support of her complaint (Doc. No. 11) and the Commissioner filed a brief in support of the answer. (Doc. No. 16) Stidum did not file a reply.

## II. Decision of the ALJ

The ALJ determined that Stidum had not engaged in substantial gainful activity since the alleged onset date of June 1, 2010. (Tr. 45) The ALJ found Stidum had the severe impairments of genu vara[1] of the right knee and obesity, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 45, 47) The ALJ found Stidum's medically determinable mental impairment of depression, not otherwise specified, did not cause more than minimal limitation in her ability to perform basic mental work activities and was thus nonsevere.[2] (Tr. 46-47)

After considering the entire record, the ALJ determined Stidum has the residual functional capacity ("RFC") to perform the exertional demands of light work, except she can lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk for at least two hours and sit for six hours in an eight-hour work day with normal breaks. In addition, the ALJ found Stidum cannot crawl or climb ladders, ropes or scaffolds, but can occasionally balance or stoop. Finally, Stidum can rarely kneel, i.e., no more than 10% of the work day. (Tr. 48)

---

[1] Genu varum refers to a deformity in which the knees are abnormally separated and the lower extremities are bowed inwardly. It is commonly referred to as "bowleg." Dorland's Illustrated Medical Dictionary 782 (31st ed. 2005).

[2] Under the regulations, the ALJ must evaluate the severity of mental impairments by gauging their impact on four broad functional areas known as the "paragraph B" criteria: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3). The regulations further provide that if the ALJ rates the claimant's limitations as "none" or "mild" in the first three areas, and "none" in the fourth area, the ALJ will generally conclude that the claimant's mental impairments are not severe, unless the evidence indicates that there is more than a minimal limitation in the claimant's ability to perform basic work activities. See Partee v. Astrue, 638 F.3d 860 (8th Cir.2011); 20 CFR § 404.1520a(d)(1).

2

The ALJ found Stidum's impairments prevented her from performing her past relevant work as a casino cashier and cashier-checker; however, there are a significant number of jobs in the national economy that she can perform, including assembler and product inspector. (Tr. 52-53) Thus, the ALJ concluded that a finding of "not disabled" was appropriate. (Tr. 53)

Stidum appeals, contending the ALJ's RFC and credibility findings are not supported by substantial evidence. The Commissioner maintains that the ALJ's decision was supported by substantial evidence on the record as a whole.

### III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

#### A. Hearing Testimony

The ALJ held a hearing in this matter on July 19, 2012. Stidum testified and was represented by counsel. (Tr. 11) Vocational expert James Israel also testified at the hearing. (Tr. 32-37)

##### 1. Stidum's testimony

At the time of the hearing, Stidum was 36 years old. (Tr. 13) She has a high school education and works as a cashier at Shop N Save, four to five days a week, averaging twenty hours per week. (Tr. 14) Prior to that, Stidum worked full-time as a cage cashier at Riverfront Station, a casino. (Tr. 15-16) Stidum testified she has difficulty standing for more than an hour to an hour and a half due to back pain and pain in her right leg and knee. (Tr. 18-19) She stated she cannot kneel or carry something heavy when walking, and has to take frequent breaks because she gets out of breath. (Tr. 20) It was Stidum's testimony that she can walk for five to ten minutes at a time, but sits most of the time. (Id.) When she sits she gets tingling in her feet. (Tr. 20) Her doctors have advised her to elevate her feet three times daily when she is sitting to

3

alleviate this. (Tr. 20-21) She also needs frequent bathroom breaks at work resulting from surgery. (Tr. 21)

Stidum testified she has trouble getting along with people and has mood swings. (Tr. 22) When she is not working, she either sleeps or sits at home and stares at the ceiling. (Id.) She doesn't answer her phone and doesn't like to be around a lot of people. (Id.) She has trouble paying attention to tasks and concentrating due to her depression. (Tr. 25) Even with her medications she is depressed every day. (Tr. 23) It was her testimony that she goes for days at a time without doing household chores or caring for herself, and has had thoughts of harming herself. (Tr.25-26) Stidum also testified she has trouble sleeping due to sleep apnea. (Tr. 23) She lives alone. (Tr. 26) She has a driver's license and drives four days out of the week. (Tr. 28)

### 2. Testimony of vocational expert

With respect to Stidum's vocational history, Israel testified that Stidum had past relevant work as a cashier or checker in a retail environment, identified as a specific vocational preparation (SVP) of three, semiskilled, and generally performed light. (Tr. 33) The casino cashier job would fit generally in that category. (Id.)

The ALJ asked Israel to assume an individual able to lift and carry twenty pounds occasionally, ten pounds frequently, who could stand and/or walk for at least two hours in an eight-hour day with normal breaks, sit for a total of about six hours in an eight-hour day with normal breaks, unable to climb ladders or scaffolds or crawl on the job; could occasionally balance or stoop and only rarely kneel. (Tr. 33) Based on this hypothetical, Israel opined that Stidum could not perform her past work. (Tr. 34) However, the Dictionary of Occupational titles (DOT) lists a cashier, gambling job that is sedentary with a SVP of 4 which would comply with her limitations, as well as check cashier jobs that are semi-skilled and sedentary. (Id.)

4

The second hypothetical asked Israel to assume the limitations of the first hypothetical with the additional factors that the individual would be limited to unskilled work having only occasional contacts with others. (Id.) Israel stated that such a person would be unable to perform those other jobs because of the interpersonal contact factor and to some extent complexity of tasks. (Id.) However, there are other types of work Stidum can perform, including sedentary assembler, DOT 734.687-018, with 1,450 jobs in Missouri, and product inspector, DOT 669.687-014, with 1,320 jobs in Missouri. (Tr. 35)

On cross-examination, Israel stated that additional limitations of needing to elevate the legs throughout the day and restroom breaks about once an hour lasting for five minutes at a time would not categorically preclude all work, but acknowledged that anything more than five minutes would disrupt workflow and add to job loss. (Tr. 37)

### B. Medical Records

The ALJ summarized Stidum's medical records at Tr. 50-52. Relevant medical records are discussed as part of the analysis.

### IV. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work

5

exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his

6

past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir.2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002).

7

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

- (1) The findings of credibility made by the ALJ;
- (2) The education, background, work history, and age of the claimant;
- (3) The medical evidence given by the claimant's treating physicians;
- (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
- (5) The corroboration by third parties of the claimant's physical impairment;
- (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
- (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

## V. Discussion

In her appeal of the Commissioner's decision, Stidum raises several issues. First, she alleges the ALJ's RFC determination is not supported by substantial evidence because he relied on the opinion of a non-examining State agency lay employee over a treating source and failed to consider her depression when assessing her limitations. (Doc. No. 11 at 8-13) Stidum further argues the ALJ relied too heavily on her attempts to work part-time and her activities of daily living in determining that she was not a credible witness. (Doc. No. 11 at 13-15) Because the ALJ erred in his RFC determination, the Court will only address that issue. Beeson v. Colvin, 2014 WL 980401, at *7 (E.D. Mo. Mar. 12, 2014).

A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations. Moore, 572 F.3d at 523. The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. See Myers v. Colvin, 721 F.3d 521, 527 (8th Cir. 2013) (RFC must be

8

determined based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of her limitations; RFC must be supported by some medical evidence). An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1994); 20 C.F.R. § 404.1529; SSR 96–7p. It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. See Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir.2012) (burden of persuasion to demonstrate RFC and prove disability remains on claimant).

Stidum first argues that in weighing the medical opinions, the ALJ erred by assigning too much weight to the opinion of a single decision maker and too little weight to the opinion of her treating physician, Mark Pelikan, M.D., including his direction to her to elevate her legs twice daily. Stidum argues this is significant because the vocational expert testified that if an individual had to elevate his legs throughout the day as needed, then work would be precluded. (Doc. No. 11 at 10)

"An ALJ may rely upon the opinion of a nontreating or consultative 'medical source,' but he may not give the same weight to the opinion of a nonmedical, or lay, state agency evaluator." Dace v. Colvin, 2014 WL 1228894, at *21 (E.D.Mo. Mar. 25, 2014) (quoting Williams v. Astrue, 2012 WL 946806, at *9 (E.D.Mo. Mar.20, 2012)). A single decision maker is not considered a medical source. Id.

In determining Stidum's RFC, the ALJ cited to SSR 96–6p and stated he had considered opinion evidence regarding Stidum's mental and physical capacity to perform work-related functions in accordance therewith. (Tr. 51) Under SSR 96–6p, an ALJ is to treat the opinions of State agency "medical and psychological consultants and other program physicians and

9

psychologists" as expert opinions. In this case, the only opinion in the record regarding Stidum's physical abilities, and upon which the ALJ accorded "significant weight," was that offered by Paul Lossman, a non-physician "single decision maker" for disability determinations.[3] (Tr. 65-70) This was error. McGlown v. Astrue, 2013 WL 328669, at *17 (E.D.Mo. Jan. 29, 2013) (quoting Dewey v. Astrue, 509 F.3d 447, 449 (8th Cir.2007)).

The Court must determine if this error was prejudicial. The Commissioner admits the ALJ erroneously mischaracterized Lossman's opinion as that of a State agency physician, but argues the ALJ's findings of additional functional limitations show he did not rely solely on Lossman's opinion and considered all of the medical evidence of record. (Doc. No. 16 at 4) The Commissioner points out that the ALJ's RFC assessment of Stidum was more restricted than Lossman's assessment in that the ALJ determined that Stidum could only occasionally balance and stoop and rarely kneel.[4] (Id.)

With respect to the opinion evidence, a review of the record indicates that the ALJ included Lossman's RFC in the recitation of the evidence when he stated that "the undersigned has considered the administrative findings of fact made by State agency physicians" and referenced Lossman's Physical RFC Assessment. (Tr. 51) In his PRFCA, Lossman opined that Stidum could lift 20 pounds occasionally and 10 pounds frequently, stand and or walk for at least two hours in an eight hour workday, sit for six hours in an eight hour workday, occasionally climb ramps and stairs and frequently balance, stoop, kneel, crouch, and crawl. (Tr. 66-68) The ALJ's determination of Stidum's RFC substantially mirrors Lossman's PRFCA with the

---

[3] The record contains two opinions, from L. Lynn Mades, Ph.D. (Tr. 369-375) and State agency physician Marsha Toll, M.D. (376-387), regarding Stidum's mental impairment and functional abilities.

[4] Stidum notes this difference is not significant. SSR 85-15 recognizes that a limitation to occasional stooping or crouching would have little to no effect on the light job base. A limitation to rare crawling or kneeling also would leave the light and sedentary occupational base intact. (Doc. No. 11 at 9 n.2)

exception of the limitation as to postural activities which have no significant effect on the light job base. Aside from assigning "little weight" to Dr. Pelikan's opinion that Stidum's physical condition causes "substantially limited major life activities" (Tr. 52), the ALJ made no other reference to a medical opinion in assessing Stidum's physical RFC. Thus, the ALJ's physical RFC determination is not supported by substantial evidence. Ivey v. Colvin, 2013 WL 5217026, at *10 (E.D. Mo. Sept. 17, 2013). See also, Andreatta v. Astrue, 2012 WL 1854749, at * 10 (W.D. Mo. May 21, 2012) (holding remand required when ALJ relied on the opinion of a single decision-maker, even if the RFC would be permissible absent consideration of single decision-maker's report).

## VI. Conclusion

Because the ALJ's RFC determination was not supported by substantial evidence on the record as a whole, the Court finds this case should be remanded to the Commissioner for a proper assessment of Stidum's functional limitations resulting from her physical impairments. On remand, the Commissioner should obtain information from acceptable medical sources regarding Stidum's physical impairments, and properly consider expert opinion evidence. McGlown, 2013 WL 328669 at *17 (citing Dixon v. Barnhart, 324 F.3d 997, 1003 (8th Cir.2003); Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir.2000); Vaughn v. Heckler, 741 F.2d 177, 179 (8th Cir.1984)).

Accordingly,

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. §405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Memorandum and Order.

11

Dated this 22nd day of September, 2014.

/s/ John A. Ross
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE